UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

MICHIGAN SPORTING GOODS
DISTRIBUTORS, INC.,

Debtor.

Chapter 11

Bankruptcy Case No.: 17-00612-jtg

Hon. John T. Gregg

_____/

## DEBTORS' FIRST OMNIBUS MOTION FOR ENTRY OF AN ORDER REJECTING CERTAIN UNEXPIRED LEASES

*NOTE: IF YOU HAVE RECEIVED THIS MOTION AND ARE A COUNTERPARTY TO A LEASE AGREEMENT WITH DEBTOR, PLEASE REVIEW <u>EXHIBIT A</u> TO THIS MOTION TO DETERMINE IF THIS MOTION AFFECTS YOUR AGREEMENT AND YOUR RIGHTS THEREUNDER.*

Debtor Michigan Sporting Goods Distributors, Inc. ("**Debtor**"), by its attorneys, files its Motion (the "**Motion**"), for entry of an order approving the rejection of certain unexpired leases and abandonment of remaining personal property located in the leased premises.[1] In support of the Motion, Debtor relies on the *Declaration of Bruce Ullery in Support of First Day Motions* (the "**First Day Declaration**")[2] and in further support states the following:

### JURISDICTION

1. This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This District is the proper venue for this case and this Motion under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2).

---

[1] This Motion seeks authority to reject nonresidential real property leases for stores that are already closed or will close soon. As a result, this Motion seeks authority to immediately reject these leases. Debtor has separately filed its Motion for Entry of an Order Establishing Procedures for the Rejection of Executory Contracts and Unexpired Leases (the "**Procedures Motion**") to establish procedures governing the rejection of other leases and executory contracts.

[2] Capitalized terms used but not defined herein will have the meanings ascribed to them in the First Day Declaration.

2. The statutory and legal predicates for the relief requested herein are sections 105(a), 365, and 554 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), and Rules 6006, 6007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

3. Founded in 1946, Debtor is a retail sporting goods chain headquartered in Grand Rapids, Michigan. Debtor offers a broad range of sporting and outdoor products, including apparel and sporting equipment from Nike, Under Armor, Burton, K2 Sports, Columbia, and Adidas.

4. Debtor employs over 1,300 full and part-time associates and operates 68 stores throughout the Midwest. Debtor's operations generate over $170 million in annual revenues.

5. Debtor's distribution center and corporate offices are located in Grand Rapids, Michigan.[3]

6. The Debtor owns no real estate. Debtor leases all of its retail store locations, its distribution center and its corporate offices.

7. Over the past four years to remain competitive, MC Sports has made substantial investments in its store portfolio, opening new stores and remodeling, expanding or relocating existing stores, and evolving, in many cases, from smaller athletic stores to larger full-line stores that offer a full range of sports and outdoor products.

8. Debtor's business operations, like many of its peers in the sporting goods retail space, have been impacted by adverse business trends, including the rapid migration of sales from traditional brick-and-mortar retailers to online resellers, the expansion of competing distribution channels and specialty retailers, and changing consumer preferences.

---

[3] Debtor operates 68 retail stores in Iowa, Illinois, Indiana, Michigan, Missouri, Ohio, and Wisconsin.

9.  In an effort to improve Debtor's financial performance, Debtor engaged Berkeley Research Group in the fall of 2016 to evaluate Debtor's inventory management processes and develop strategies to improve and optimize inventory turns and margins, to rationalize Debtor's store base, and to explore additional cost savings initiatives and efficiencies.

10. Weaker than expected 2016 "Black Friday" and holiday sales, however, resulted in further impairment of Debtor's liquidity. As a result, in December of 2016, Debtor and its professionals entered into negotiations with an *ad hoc* committee of trade vendors and other key creditor constituencies, including its landlords, for financial concessions, all in an effort to address Debtor's liquidity constraints and reach a consensual, out-of-court financial restructuring.

11. Notwithstanding the good faith attempts of the ad hoc committee and other creditor stakeholders, however, Debtor was ultimately unable to finalize a restructuring plan.

12. Accordingly, on February 14, 2017 ("**Petition Date**"), Debtor filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

13. Debtor continues to manage its properties and operate its business as a debtor-in-possession in accordance with Bankruptcy Code §§ 1107 and 1108. No trustee, examiner, or official committee has been appointed in this case.

## RELIEF REQUESTED

14. Debtor seeks entry of an order: (a) approving rejection of the Rejected Leases (as defined below) identified on Exhibit A,[4] effective as of the rejection dates (the "**Rejection**

---

[4] Copies of individual Rejected Leases are available to any party in interest upon written request to Debtor's attorneys. This Motion is without prejudice to Debtor's right to claim that any one or all of the Rejected Leases expired by their own terms or were terminated before the Rejection Date. Moreover, nothing herein may be deemed an admission that the Rejected Leases are enforceable obligations of the Debtor, are executory in nature, or that any of the landlords identified on Exhibit A have a valid claim against Debtor as a result of the lease rejection.

Dates") set forth on Exhibit A; (b) authorizing Debtor to abandon any personal property located at the Leased Premises; and (c) fixing a bar date for claims, if any, of the landlords to the Rejected Leases.

15. Debtor has already ceased or will cease operating at the following stores (the "**Closed Stores**"):

| Store No. | Store Name | Store Address | Date Closed |
|---|---|---|---|
| 149 | Wooster, OH | Wooster Place Plaza, 3749 Burbank Road, Wooster, OH | 2/28/2017 |
| 166 | Jefferson City, MO | Wildwood Crossing Shopping Center, 3535 Missouri Blvd., Ste. 123, Jefferson City, MO | 1/31/2017 |
| 181 | Piqua, OH | Miami Valley Crossing, 1266 East Ash Street, Piqua, OH | 2/28/2017 |
| 188 | Delavan Crossing | 2135 East Geneva Street Delavan, WI 53115 | 10/1/2016 |
| 193 | Muncie, IN | Muncie Towne Center, 940 East Princeton Ave., Muncie, IN | 2/28/2017 |
| 195 | Wadsworth, OH | Wadsworth Crossing, 1048 Williams Reserve Blvd., Wadsworth, OH | 1/31/2017 |
| 196 | Marysville, OH | Coleman's Crossing, 730 Coleman's Crossing Blvd., Marysville, OH | 1/31/2017 |
| 201 | Anderson, IN | Southtown Center, 4532 Scatterfield Road, Anderson, IN | 10/1/2016 |

16. Debtor leases and does not own the real property on which the Closed Stores operate (the "**Leased Premises**").

17. Debtor requests that the Court authorize Debtor to reject the leases (and any modifications, amendments, addenda, supplements, or restatements thereof) covering the Closed Stores ( the "**Rejected Leases**") effective as of the dates set forth on Exhibit A and grant Debtor authority to abandon the Remaining Property (defined below), if any, located at the Closed Stores.

18. Absent the relief requested, Debtor may continue to be obligated to pay rent or other charges in respect of the Rejected Leases, even though Debtor no longer operates the

Closed Stores and may have no other productive uses for the premises. The prompt rejection of the Rejected Leases will reduce Debtor's expenses and maximize the value of Debtor's estate.

**BASIS FOR RELIEF**

**A.    Rejection of the Contracts and Leases is a Sound Exercise of Debtor's Business Judgment**

19.    Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). *See Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1075 (3d Cir. 1992). "The statutory purpose of Section 365 of the Bankruptcy Code is to enable the trustee [or debtor in possession] to assume those executory obligations which are beneficial to the estate while rejecting those which are onerous or burdensome to perform." *Leasing Service Corp. v. First Tennessee Bank Nat'l Association*, 826 F.2d 434, 436 (6th Cir. 1987). *See also, Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996). Rejection of an executory contract or unexpired lease is appropriate where rejection of the contract or lease would benefit the estate. *See L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.)*, 209 F.3d. 291, 298 (3d Cir. 2000); *see also Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39 (3d Cir. 1989).

20.    The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor. *See NLRB v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the `business judgment' test."), *aff'd* 465 U.S. 513 (1984); *see also Computer Sales Int'l, Inc. v. Fed. Mogul (In re Fed. Mogul Global, Inc.)*, 293 B.R. 124, 126 (D. Del. 2003); *JRT, Inc. v. TCBY Systems, Inc. (In re JRT)*, 121 B.R. 314, 321 (Bankr. W.D. Mich. 1990) ("In determining whether a contract is burdensome, courts have

utilized a business judgment test."). The business judgment standard mandates that a court approve a Debtor's business decision unless the decision is the product of bad faith, whim, or caprice. *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001); *see also Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315-16 (Bankr. D. Utah 1981) (absent extraordinary circumstance, court approval of a Debtor's decision to assume or reject an executory contract "should be granted as a matter of course"). Accordingly, if a debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. *See Fed. Mogul*, 293 B.R. at 126.

21. Debtor has terminated or will soon terminate operations at the Closed Stores. The Rejected Leases may be a financial burden and unnecessary expense for the Debtor and its estate. As a result, under those circumstances, rejection of the Rejected Leases will plainly reflect Debtor's exercise of sound business judgment.

22. Further, to the extent any personal property, furniture, trade fixtures, and equipment owned by the Debtor (the "**Remaining Property**") remains on the Leased Premises, Debtor requests that such Remaining Property be deemed abandoned pursuant to section 554 of the Bankruptcy Code. Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Debtor has determined that the Remaining Property is either: (i) burdensome to the estate to the extent that costs associated with removal and storage of this property is likely to exceed any net proceeds from the property; or (ii) of inconsequential value and benefit to the estate. Accordingly, abandonment of the Remaining Property reflects Debtor's exercise of sound business judgment and is in the best interests of Debtor, its estate, its creditors and other parties in interest.

**B.     Reasonable Notice Has Been Provided**

23.     Bankruptcy Rule 9014 provides, in part, that "reasonable notice and opportunity for hearing shall be afforded the party against whom the relief is sought." *See* Fed. R. Bankr. P. 9014(a).[5] The notice and hearing requirements for contested matters under Bankruptcy Rule 9014 are satisfied if appropriate notice and an opportunity for hearing are given in light of the particular circumstances. *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" or a similar phrase to mean such notice and an opportunity for a hearing "as [are] appropriate in the particular circumstances").

24.     The landlords of the Rejected Leases (the "**Landlords**") have received notice of Debtor's intent to reject the Rejected Leases by notice of this Motion. Additionally, upon receipt of this Motion, the Landlords will receive notice of the effective date of the rejection and will have had an opportunity to object. *See, e.g.*, *In re Mid Region Petroleum, Inc.*, 111 B.R. 968, 970 (Bankr. N.D. Okla. 1990) (holding effective date of rejection of leases was the date the trustee gave notice to lessor of intent to reject).

25.     Since Debtor has already vacated the Leased Premises for stores Nos. 166, 188, 195, 196, and 201, Debtor submits that making the rejection for those premises effective as of the Petition Date is appropriate. *See, e.g.*, *Adelphia Bus. Solutions, Inc. v. Abnos*, 482 F.3d 602, 608-09 (2d Cir. 2007) (holding bankruptcy court did not abuse its discretion in finding balance of equities favored making rejection of a nonresidential lease of real property retroactive to date tenant vacated premises, as tenant's action provided landlord with opportunity to relet premises); *In re Amber's Stores*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (holding that lease at issue

---

[5] Rule 9014 is made applicable to a motion to reject by Bankruptcy Rule 6006(a), which provides that "[a] proceeding to . . . reject . . . an executory contract or unexpired lease, other than as part of a plan, is governed by Rule 9014." Fed. R. Bankr. P. 6006(a).

should be deemed rejected as of the petition date due to equities of the case where debtor vacated premises and served motion to reject lease as soon as possible).

26. Bankruptcy Rule 6006(f), in relevant part, requires that a motion to reject multiple executory contracts or unexpired leases:

> (1) state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;
>
> (2) list parties alphabetically and identify the corresponding contract or lease;
>
> . . .
>
> (5) be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and
>
> (6) be limited to no more than 100 executory contracts or unexpired leases.

The purpose of Bankruptcy Rule 6006(f), as amended, is to protect the due process rights of the parties to the Rejected Leases. Counterparties must be able to locate their lease and readily determine whether their lease is being rejected. Debtor has complied with the foregoing requirements of Bankruptcy Rule 6006(f).

## CLAIMS BAR DATE

27. As set forth above, the Landlords may seek to assert a rejection damage claim under section 502 of the Bankruptcy Code or other claims in connection with the Rejected Lease or the rejection or termination of the Rejected Lease. Debtor requests that the Court fix a claims bar date with respect to the Rejected Lease for the later of (i) thirty (30) days after entry of an order granting the relief requested in this Motion or (ii) the general bar date established by this Court for filing proofs of claim against Debtor.

28. Bankruptcy Rule 3003(c)(3) provides: "[t]he court shall fix. . . the time within which proofs of claim may be filed." Bankruptcy Rule 2002(a)(7) requires at least twenty days' notice by mail of the time fixed for filing proofs of claim and interest pursuant to Bankruptcy Rule 3003(c)(3).

## RESERVATION OF RIGHTS

29. Nothing in this Motion or proposed order is intended or should be construed as: (a) an admission as to the validity of any claim against Debtor and its estate; (b) a waiver of the rights of Debtor and its estate to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an admission that any particular claim is of a type specified or defined hereunder; (e) a request or authorization to assume any executory contract or unexpired lease; or (f) a waiver of the rights of Debtor and its estate under the Bankruptcy Code or any other applicable law, pursuant to section 365 of the Bankruptcy Code.

## NOTICE

30. The Debtor will provide notice of this Motion to: (i) the U.S. Trustee; (ii) the Landlords; (iii) Wells Fargo; (iv) holders of the twenty (20) largest unsecured claims on against Debtor; and (v) all parties who, as of the filing of this Motion, have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, Debtor respectfully requests that this Court enter the proposed order attached as <u>Exhibit B</u>, granting the relief requested in the Motion and such other and further relief as is just and proper.


Dated: February 14, 2017

Respectfully submitted,

WARNER NORCROSS & JUDD LLP

/s/ Stephen B. Grow
Stephen B. Grow (P39622)
Robert H. Skilton (P20550)
Elisabeth M. Von Eitzen (P70183)
R. Michael Azzi (P74508)
Emily S. Rucker (P79228)
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, Michigan 49503
Telephone: (616) 752-2000
Counsel for Debtor

15460553-3